UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |  |
|---|---|---|
| COREY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 7:22-CV-97-CHB-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Federal prisoner Corey Taylor brought this lawsuit in September 2022, alleging various civil-rights violations related to an assault in federal prison.  D.E. 1.  Since February 14, 2023, he has been assisted by counsel.  D.E. 13.  Beginning June 30, 2023, the case has proceeded on the First Amended Complaint.  D.E. 21.  The First Amended Complaint names as defendants the United States government (through the Federal Bureau of Prisons), Lt. Kevin C. Pearce, Jr., Nurse Practitioner Heather Eperson, and two correctional officers, Clinton L. Pauley and Samuel J. Patrick.  *Id.*

On October 21, 2023, Defendant Pearce moved to dismiss the eleven charges against him in the First Amended Complaint.  D.E. 35.  Taylor responded.  D.E. 47.  On December 26, 2023, Pearce replied.  D.E. 50.  On January 4, 2024, Taylor moved for leave to file a Second Amended Complaint.  D.E. 52.  On January 8, Judge Boom referred Pearce's motion to dismiss and Taylor's motion to amend to the undersigned.  D.E. 55.  Defendant Pearce explained he had no objection to the motion to amend, and agreed with Taylor that the amendment would resolve several issues in the motion to dismiss.  D.E. 54.  Specifically, in the Second Amended Complaint, Pearce is no

longer named in Counts IV, V, VI, and VII. *Id.* On February 12, 2024, the undersigned granted the motion to amend (D.E. 61) and the Second Amended Complaint (D.E. 62) became the operative complaint in this matter.

The Court now issues its recommendation on the remaining issues in Lt. Pearce's motion to dismiss (D.E. 35), disregarding the issues that were resolved by the filing of the Second Amended Complaint.

## I. Background

While Corey Taylor was incarcerated at USP Big Sandy in Inez, Kentucky, he was assaulted by two prison guards. These guards—Defendants Patrick and Pauley—have pleaded guilty to federal criminal charges of deprivation of civil rights under color of law and are now federal prisoners themselves. *See* D.E. 21-3 & -4 (plea agreements); *see also United States v. Patrick, Pauley, & Pearce,* No. 7:22-CR-09-REW-EBA. The factual statements from the plea agreements are similar. The following paragraph contains a description of the assault and resulting cover-up from Defendant Patrick's plea agreement. "C.T." is of course the plaintiff here, Corey Taylor. And Lt. Pearce is mentioned as well:

> (a) On or about April 29, 2021, the Defendant [Patrick] was working a shift as a Case Management Coordinator ("CMC") at United States Penitentiary Big Sandy ("Big Sandy"). That same day, the Defendant was in the Big Sandy Lieutenants' Office when an inmate, C.T., was escorted into the office in order to request protective custody. While C.T. was in the office, the Defendant took C.T. to the ground and elbowed him repeatedly in the head. The Defendant did this out of anger and not due to any legitimate correctional purpose. During the assault, the Defendant believed Defendant Clinton L. Pauley was holding C.T.'s legs to assist the Defendant. Defendant Kevin C. Pearce, a Lieutenant, was also in the Lieutenants' Office and witnessed the Defendant's assault on C.T. C.T. did not threaten or attempt to harm the COs or himself before, during, or after the Defendant assaulted him. C.T. was compliant through his entire time in the office and was not resisting or physically aggressive at any point. He was not handcuffed after the Defendant's assault. The Defendant knew that his actions were unlawful and violated Constitutional limits on the use of force and the federal Bureau of Prisons' policies and training regarding use of force. His assault on C.T. resulted

in bodily injury to C.T.  After the assault and in violation of BOP policies and procedures, Defendant Pearce then unilaterally denied C.T.'s protective custody request and ordered that C.T. should be taken to a general housing unit.

(b) On or about April 29, 2021, the Defendant and other BOP employees, including Defendant Pauley and Defendant Pearce, unlawfully agreed to cover up the assault.  As part of this agreement, Defendant Patrick later drafted a false memorandum in which he omitted any mention of his assault on C.T., and Defendant Pauley and Defendant Pearce agreed to write similarly false memoranda. Also as part of this agreement, the Defendant sent an email entitled "call me," to a BOP Employee identified in the superseding indictment as BOP Employee 1.  BOP Employee 1 had witnessed the Defendant's assault of C.T., and the Defendant and other members of the cover-up, including Defendant Pearce, were attempting to corruptly persuade BOP Employee 1 to join the cover-up.  The Defendant hoped that by speaking with BOP Employee 1, he could assist with ongoing efforts to convince BOP Employee 1 to join the cover-up.

*United States v. Patrick*, No. 7:22-CR-09-REW-EBA, D.E. 99 at 2-3 (Feb. 22, 2023).

Lt. Pearce did not plead guilty.  He was ultimately convicted by a jury of two counts of falsification of records in a federal investigation.  *See Patrick*, No. 7:22-CR-09-REW-EBA, D.E. 217 (judgment).  The first of these two counts (Count 3 of the Superseding Indictment) was for helping cover up the assault of Taylor.  *See id*., D.E. 55 at 3-4 (Superseding Indictment).  As stated in that Superseding Indictment:

Defendant PEARCE wrote a memorandum documenting a false account of officers' interactions with C.T., intended to cover up the assault of C.T. as described in Count 1.  In his memorandum, Defendant PEARCE, in pertinent part, (1) wrote that BOP Employee Two was present in the lieutenants' office with C.T.; (2) wrote that C.T. left the lieutenants' office "without incident"; and (3) omitted that C.T. had been assaulted as described in Count 1.  The memorandum was false and misleading because, as Defendant PEARCE then well knew, (1) BOP Employee Two was not present in the lieutenants' office; (2) C.T. did not leave "without incident," but rather left after being assaulted as described in Count 1; and (3) Defendants PATRICK and PAULEY had assaulted C.T. as described in Count 1.

*Id*.  The jury acquitted Pearce of Counts 2, 8, and 9.  *Id*., D.E. 141 (verdict form).  Count 2 alleged Pearce directed Employee 1 to write an untruthful report.  *Id*., D.E. 55 at 3.  Counts 8 and 9 concerned a different assault of a different inmate.  *Id*. at 6-8.

Here are the Counts against Lt. Pearce in Taylor's Second Amended Complaint (hereafter, "2A Complaint"):

- Count IX levies a *Bivens* claim, alleging both cruel and unusual punishment and excessive force.  D.E. 62 at 22.  This is the only claim against Pearce under federal law.

- Count XI alleges the Kentucky tort of intentional infliction of emotional distress.  *Id.* at 24.

- Count XII alleges the Kentucky tort of invasion of privacy by intrusion.  *Id*. at 25.

- Count XIII alleges the Kentucky tort of civil harassment.  *Id*. at 26.

- Count XIV alleges the Kentucky tort of terroristic threatening.  *Id*. at 27.

- Count XV alleges the Kentucky tort of menacing.  *Id.*

- Count XVI alleges civil conspiracy.  *Id*. at 28.

Defendant Pearce argues that all these Counts against him should be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  D.E. 35, 50.

## II.  General Legal Standards

Rule 12(b)(6) permits dismissal of counts which fail to state a claim upon with relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing a Rule 12(b)(6) motion, the Court accepts all the non-moving party's factual allegations as true and construes the complaint in the light most favorable to the non-moving party.  *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013).  For a claim to be viable, the pleading must go beyond labels and conclusions and formulaic recitations of the elements of a cause of action.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id*., and must "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In practice, a claim must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984).

### III. *Bivens* Claims

Count IX of Taylor's 2A Complaint is couched as a "*Bivens* Claim" alleging Eighth Amendment cruel and unusual punishment and Eighth Amendment excessive force. D.E. 62 at 22. Count IX goes on to state that Taylor has the rights under the Eighth Amendment (1) "to be housed in a safe and secure environment while in the custody of the BOP;" (2) "not to be subjected to cruel and unusual punishment while in the custody of the BOP;" (3) "to be free from the use of excessive force;" and (4) "to be provided adequate medical care in private." *Id*. at 23.

Pearce argues that these four rights have not been recognized by the Supreme Court as being actionable under *Bivens*. D.E. 35 at 8-12. In his brief in response to Pearce's motion, Taylor devotes a single paragraph to Count IX. He states,

> The Claim pursuant to *Bivens* within the Amended Complaint should not be dismissed. The Amended Complaint sets forth the fact that the Plaintiff has established rights under the Eighth Amendment. The Supreme Court has specifically recognized the same in *Carlson v. Green*, 446 U.S. 14 (1980). The Amended Complaint sets out the violations by the Defendants, including Pearce, in detail, and the allegations are sufficient to survive a motion to dismiss.

D.E. 47 at 10. Taylor's vagueness and lack of caselaw citations are telling. Pearce is indeed correct that Taylor is asserting *Bivens* claims that are not properly brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Judge Wier recently surveyed the current controlling caselaw on *Bivens* in *Bennett v. Gomez, et. al.*, No. 6:22-CV-45-REW, D.E. 56 (Jan. 30, 2024). The Court here draws on Judge Wier's analysis. He explained:

> Under *Bivens*, a plaintiff may recover damages for a constitutional violation by a federal actor in select circumstances. *Egbert v. Boule*, 142 S. Ct. 1793, 1802-03 (2022). However, here, given the decades of conceptual pruning by the Supreme Court since *Bivens*, before a plaintiff may recover, the Court must determine whether the claim arises in a new *Bivens* context, and—if so—whether special factors indicate that the judiciary is less well-equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017)). Safe to say, a court should be on high alert about venturing into new ground under *Bivens*.
>
> Thus far, the Supreme Court has recognized only three contexts for a *Bivens* recovery: (1) when federal agents handcuffed a man in his home without a warrant, in violation of the Fourth Amendment, *see generally Bivens*, 91 S. Ct. 1999, 2005; (2) when a Congressman fired a staffer based on her sex, in violation of the Fifth Amendment, *see generally Davis v. Passman*, 99 S. Ct. 2264 (1979); and (3) when federal prison officials were deliberately indifferent to a BOP inmate's serious medical needs, in violation of the Eighth Amendment, *see generally Carlson v. Green*, 100 S. Ct. 1468 (1980). Recently the Supreme Court has cautioned, with great vigor, against finding novel implied causes of action under *Bivens*. *See Ziglar*, 137 S. Ct. at 1857. Thus, "expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* And the Court has "consistently refused to extend *Bivens* to any new context or new category of defendants" *Correctional Services Corp. v. Malesko*, 122 S. Ct. 515, 520 (2001). The Supreme Court reinforced this stance in *Egbert. See Egbert*, 142 S. Ct. at 1803. Against this backdrop, the Court considers Plaintiffs' claims.
>
> Beginning with the first prong of the honed analysis, the Court must determine whether Plaintiffs' claims present a new *Bivens* context. If the case differs "in a meaningful way from previous *Bivens* cases . . . then the context is new." *Ziglar*, 137 S. Ct. at 1859. The second prong—special factors—applies if the context is new, but the Court has in some ways merged the analysis, given factorial and analytical overlap. The "new context" signals include different tier federal defendants, different underlying rights, the extent and clarity of judicial guidance, the operative legal mandate, the risk of judicial intrusion, and other factors not considered by previous *Bivens* cases. *Ziglar*, 137 S. Ct. at 1859-60. That last one shows the blurring. As *Egbert* stated, the steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy?" *Egbert*, 142 S. Ct. at 1803.

*Id.* at 5-6.

Here, Taylor's alleged *Bivens* claims do not fit within any of the three categories of claims the Supreme Court has recognized under *Bivens*. Taylor cites no case wherein a court granted *Bivens* relief on the basis of unsafe housing, cruel and unusual punishments, excessive force, or "adequate medical care in private." The Court does not interpret the 2A Complaint as asserting a claim of deliberate indifference to serious medical needs. D.E. 62. Nor does Taylor allege deliberate indifference in his response brief. D.E. 47. Taylor's four alleged rights-deprivations each posit a new *Bivens* context. They meaningfully differ from previous *Bivens* cases. Taylor points to no special factors that indicate that the judiciary is less well-equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803.

For these reasons, the Court recommends dismissal of Count IX for failure to state a claim for which relief can be granted. Count IX's alleged deprivations of rights are not the type that can be brought under the *Bivens* rubric.

The 2A Complaint dropped Taylor's previous FTCA claims against Defendant Pearce. If the *Bivens* claims are dismissed, then there remain no valid federal claims against this defendant.

### IV. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

The 2A Complaint suggests diversity jurisdiction exists. D.E. 62 at 5 ¶ 9. Lt. Pearce argues Taylor has not adequately pleaded diversity jurisdiction. D.E. 35 at 25-26. In his response brief, Taylor does not argue that the requirements for diversity jurisdiction are satisfied. D.E. 47 at 16-17. The Court interprets this as a concession that Taylor has not met his burden to establish diversity jurisdiction. Indeed, the 2A Complaint fails to allege the citizenship of each party, as

required.  *See Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 764-66 (6th Cir. 2019) (requiring "meticulous" pleading when diversity jurisdiction is asserted).  Taylor has not met his burden to establish diversity jurisdiction under 28 U.S.C. § 1332.

If the District Judge agrees that the *Bivins* Count should be dismissed, then the Court can either (1) stop right here, decline to exercise supplemental jurisdiction over the state-law claims, and dismiss them (and Lt. Pearce) without prejudice; (2) consider the merits of the state law claims, dismiss with prejudice the inadequately pleaded state law claims, and decline to exercise supplemental jurisdiction over the remainder; or (3) dismiss any inadequately pleaded state law claims and maintain supplemental jurisdiction over the remaining state law claims.

When a Court has dismissed all the plaintiff's federal claims, generally the balance of judicial economy, convenience, fairness, and comity all point toward declining to exercise supplemental jurisdiction.  *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010).  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Id*.  "After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."  *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996).

Given these presumptions, the Court would normally recommend dismissing Taylor's state law claims without prejudice.  *See Dixon v. Joyner*, No. 7:23-CV-30-REW, 2023 WL 3729319, at *3 (E.D. Ky. May 30, 2023).  But Taylor argues the case belongs in federal court because it involves a federal prisoner, BOP employees, and activities occurring in a federal prison.  D.E. 47 at 16-17.  This case also has codefendants with intertwined claims, some of which are premised on federal law.  If the codefendants' claims ultimately remain in federal court, then judicial

economy, convenience, and fairness weigh in favor of supplemental jurisdiction (over against the ever-present comity interest of letting state courts resolve state-law claims).

Under these unique circumstances, the undersigned will recommend exercising (at least temporary) supplemental jurisdiction over any remaining state-law claims. This exercise of supplemental jurisdiction should, however, be revisited if Taylor's federal claims against the codefendants are ultimately resolved before trial. If the District Judge chooses to exercise supplemental jurisdiction over the state law claims, the Court provides the following analysis of the merits.

### V.  Intentional Infliction of Emotional Distress

Count XI alleges the Kentucky tort of intentional infliction of emotional distress ("IIED"). D.E. 62 at 24. IIED is known as a "gap-filler" tort. Under Kentucky law, when the defendant's conduct "amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of [IIED] will not lie." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993). "If a set of facts establishes a traditional tort, by definition it *cannot* establish intentional infliction of emotional distress." *Childers v. Geile*, 367 S.W.3d 576, 584 (Ky. 2012). Assuming there is a "gap" to be filled, then:

> To make out a claim of IIED, the following elements must be proved: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.

*Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999).

> With respect to the first element, a party must establish that the wrongdoer intentionally or recklessly caused severe distress. The Kentucky Supreme Court has instructed that to establish recklessness, "the wrongdoer must engage in

conduct which demonstrates total disregard for the other party . . . that is so insensitive and irresponsible as to rise to the level of being deemed virtually intentional." "It must be the conduct which any normal and prudent person would know was likely to cause extreme emotional distress." To prove the second element of extreme and outrageous conduct, a party must point to conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" In addition, "extreme and outrageous behavior 'may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.'" Finally, the Kentucky Supreme Court has stated that to prove the fourth element of severe emotional distress, "substantially more than mere sorrow is required."

*Nationwide Mut. Ins. Co. v. Ramey*, 230 F.3d 1359 (6th Cir. 2000) (citations omitted).

Lt. Pearce argues that Count XI of the Second Amended Complaint does not satisfy the elements of outrageousness or severity. *See* D.E. 35 at 12-15; D.E. 50 at 7-8. He also argues that, since IIED is a "gap-filler," Count XI is "properly swallowed by the assault and battery claims against Mr. Patrick and Mr. Pauley." D.E. 50 at 7.

The Court here makes no ruling as to whether Taylor's IIED claim against *Pearce* is "properly swallowed" by Taylor's assault and battery claims *against two other individuals*. There is no need to address this topic because Taylor's allegations against Pearce do not rise to the level of sufficient outrageousness or severity.

In Count XI, the 2A Complaint states that Pearce

committed the act of intentional infliction of emotional distress upon Taylor, as defined under the laws, standards, and customs of the Commonwealth of Kentucky. [He] acted intentionally or recklessly . . . in a manner that was outrageous and intolerable in that it offend[s] against general standards of decency and morality. The actions . . . were a direct and proximate cause of severe mental distress for the Plaintiff.

D.E. 62 at 24-25; *see also id*. at 19 (similar statements in Count V). These statements merely recite the legal elements of the claim. So, the Court looks elsewhere in the 2A Complaint for supporting factual allegations.

According to the 2A Complaint, "Defendants Pauley and Patrick physically assaulted Taylor, in the presence of Defendant Pearce. Following the assault, Taylor was escorted to medical by Pearce, and in an effort to intimidate Taylor, Pearce stayed in the examination room while Taylor received treatment." D.E. 62 at 3. Pearce is alleged to have "denied Taylor's request for placement in protective custody," giving "no reason or explanation as to why the request was denied." *Id*. at 9 ¶ 42. Leading up to the assault, "Pearce was verbally aggressive and threatening in his words and demeanor with the Plaintiff." *Id*. ¶ 44. "Pearce looked on" while the other two assaulted Taylor and made no "attempt to stop the assault. *Id*. ¶P 46-47. "Defendants were using derogatory terms to refer to the Plaintiff, including 'bitch' and 'race traitor.'" *Id*. ¶ 48. Later, Taylor also "protested, out of fear for his life," against being escorted alone by Lt. Pearce to the medical facility. *Id*. ¶ 58. Pearce was in the examination room, and Taylor alleges Pearce's presence prevented him from fully disclosing the nature of the assault. *Id*. at 11. In terms of his injuries, Taylor alleges:

63.    When Jane Doe evaluated Taylor he presented with cuts, laceration and swelling to the face and head area – all consistent with trauma.

64.    X-Rays confirmed that, as a result of the assault, Taylor suffered a broken nose.

65.    As a result of the assault, Taylor also suffers from sensitive[ity] to light and blurred vision.

66.    Plaintiff Taylor suffered from physical plain for an extended period of time following the assault, and has suffered continual emotional and mental distress, fear and anxiety as a result of the actions of the Defendants.

*Id*. The Court also considers the narratives included in the plea agreements entered as exhibits to the 2A Complaint. *See, e.g., United States v. Patrick*, No. 7:22-CR-09-REW-EBA, D.E. 99 at 2-3 (Feb. 22, 2023).

The facts in the 2A Complaint, accepted as true, would not establish that *Lt. Pearce* engaged in "outrageous and intolerable" conduct that "offends against generally accepted standards of decency and morality" that were "intended only to cause extreme emotional distress in the victim" and that also *caused* Taylor to have "severe" emotional distress. *Childers v. Geile*, 367 S.W.3d 576, 581-82 (Ky. 2012). For purposes of considering this Count, the Court accepts as true that Taylor has suffered severe emotional distress following the assault. But what is Lt. Pearce alleged to have done for the purpose of causing severe distress and that did cause severe distress? He denied protective custody. He watched while Pauley and Patrick beat Taylor. Additionally, the Court assumes Pearce is included among the "Defendants" who used "derogatory terms" like "bitch" and "race traitor" during the assault. And Pearce accompanied Taylor to the medical facility and hung around during Taylor's medical exam.

Could a reasonable jury find all the elements of IIED here? No. Pearce's behavior in saying "aggressive and threatening" things, watching an assault, saying derogatory terms, and hanging around during a medical exam—particularly in the context of the relationship between a prisoner and lieutenant—would not be outrageous conduct that could have been expected to cause, was solely intended to cause, and did cause severe emotional distress. The alleged facts are not the sort of behavior any normal and prudent person would know was likely to cause extreme emotional distress. And Taylor does not allege he was particularly susceptible to emotional distress in some way that was known to Pearce. The alleged facts, accepted as true, fail the outrageousness, intentionality, and causality elements.

## VI. Invasion of Privacy

Count XII alleges the Kentucky tort of "invasion of privacy by intrusion." D.E. 62 at 25. This appears to be the same tort as "intrusion upon seclusion." Federal District Courts in Kentucky

have assumed that Kentucky would recognize such a claim and would apply the elements from the Restatement (Second) of Torts § 652(B). *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 819-20 (E.D. Ky. 2019); *Wells v. Craig & Landreth Cars, Inc.*, No. 3:10-CV-376, 2012 WL 6487392, at *5 (W.D. Ky. Dec. 13, 2012); *Fredrick v. Oldham Cnty. Fiscal Ct.*, No. 3:08-CV-401-H, 2010 WL 2572815, at *5 (W.D. Ky. June 23, 2010); *Warinner v. N. Am. Sec. Sols., Inc.*, No. 3:05-CV-244-S, 2008 WL 2355727, at *2-3 (W.D. Ky. June 5, 2008); *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003).

The tort requires (1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person. *Smith*, 275 F. Supp. 2d at 822. In terms of intentionality, the defendant will only be liable if he "desired to cause the consequences of his act" or "believed that the consequences were substantially certain to result from it." *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2023 WL 2755305, at *13 (W.D. Ky. Mar. 31, 2023). "What constitutes a private matter is dependent upon whether the plaintiff has a reasonable expectation of privacy in the subject information." *Clark v. Teamsters Loc. Union 651*, 349 F. Supp. 3d 605, 622 (E.D. Ky. 2018) (quoting *Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283, 294 (6th Cir. 2012)).

Count XII states that Pearce "intentionally intruded upon the solitude or seclusion of Plaintiff Taylor in his private affairs or concerns [and this] intrusion by Defendant Pearce would be highly offensive to a reasonable person." D.E. 62 at 25. Count IV contains a corresponding "Invasion of Privacy" claim under the FTCA. *Id*. at 17-19. It says, "Pearce knew or should have known, that Taylor had an expectation of privacy when receiving medical care," even though he was a prisoner. *Id*. at 18. And "Pearce knowingly and willingly violated Taylor's expectation of

privacy when he insisted on staying in the examination room while Taylor received medical care"—a situation he says would be highly offensive to a reasonable person. *Id*.

Lt. Pearce's primary argument in support of dismissal is that a prisoner's right to medical-information privacy is subject to substantial limitations. D.E. 35 at 16-17. Pearce argues that Courts routinely give deference to prison officials when it comes to matters of staff and inmate safety. *Id*. Thus, the argument seems to be that Taylor either lacked a reasonable expectation of privacy or that a reasonable person would not have found Pearce's intrusion highly offensive under the circumstances.

Taylor essentially alleges Pearce followed him into a post-assault medical examination in order to intimidate him. This satisfies the first, "intentional intrusion," element. The "right to keep private" element depends on the plaintiff's reasonable expectation of privacy in the situation. Does a prisoner have a reasonable expectation of privacy in a post-assault medical exam? Lt. Pearce cites a federal inmate handbook which informs prisoners that they "have the right to be examined in privacy" unless special "security is required during your examination." D.E. 35 at 16. There is no indication on this record security was required during Taylor's post-assault examination. The inmate handbook's statement that prisoners "have the right to be examined in privacy" is consistent with Taylor's implied assertion he had a reasonable expectation of privacy.

The third element is whether the intrusion would be highly offensive to a reasonable person. What complicates this case is that the intrusion is not alleged to be *per se* highly offensive. Rather, the allegation is that the intrusion was done with the intent to intimidate Taylor into withholding the details of the assault. Accepting his factual aversions as true, Taylor was followed into the examination room by the officer who had threatened and harassed him and stood by doing nothing while he was beaten by two guards. A reasonable jury could find high offensiveness on

14

this record.  Applying appropriate deference, this claim is not subject to 12(b)(6) dismissal at this juncture.

## VII.  Civil Harassment

Count XIII alleges the Kentucky tort of civil harassment.  D.E. 62 at 26.  The language of this Count draws upon Ky. Rev. Stat. § 525.070(1)(e).  That subsection of the *criminal* harassment statute says a person is guilty of harassment "when, with intent to intimidate, harass, annoy, or alarm another person, he or she [e]ngages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."  Kentucky has adopted a civil tort version of this offense.  *Radcliff Auto., LLC v. Morgan*, No. 2020-CA-0274-MR, 2022 WL 1275765, at *2 (Ky. Ct. App. Apr. 29, 2022) (citing *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984)), *review denied* (Sept. 14, 2022).

Count XIII alleges Pearce "engaged in a course of conduct with intent to intimidate, harass, annoy or alarm" him.  D.E. 62 at 26.  Taylor argues in his response brief that Pearce's course of conduct includes "that Pearce refused the Plaintiff's request for protective custody, engaged in verbal abuse of the Plaintiff, and followed the Plaintiff into a medical exam as a means of harassment or intimidation." D.E. 47 at 13.  Although his argument is terse, Taylor may be arguing that requisite intent may be inferred from the factual allegations in total.  Accepting the factual allegations as true and drawing all reasonable inferences in Taylor's favor, this is enough to avoid 12(b)(6) dismissal on this Count.  We have here a course of conduct that, as alleged, served no legitimate purpose, was alarming, and was intended to intimidate, harass, annoy, or alarm.

## VIII.  Terroristic Threatening

Count XIV alleges the Kentucky tort of terroristic threatening.  D.E. 62 at 27.  This Count claims "Defendant Pearce threatened the Plaintiff by threatening to commit a crime likely to result

15

in death or serious injury." *Id*. This language appears derived from the misdemeanor crime of third-degree terroristic threatening, which happens when a person "threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person." Ky. Rev. Stat. Ann. § 508.080.

Pearce correctly points out that the 2A Complaint contains no factual allegation of a threat from Pearce to commit a crime likely to result in death or serious injury. D.E. 35 at 19-20. Taylor responds that he has alleged Pearce was "verbally aggressive and threatening in his words and demeanor with the Plaintiff." D.E. 47 at 13-14. And "the Plaintiff was subsequently assaulted." *Id*. However, Taylor was assaulted by the Patrick and Pauley, not Pearce. Although the 2A Complaint alleges Pearce was "threatening in his words," it does not specify any threat to commit a crime likely to result in death or serious physical injury. Dismissal of Count XIV is appropriate.

## IX. Menacing

Count XV alleges the Kentucky tort of menacing. D.E. 62 at 27. The parties both quote the criminal statute's language that "[a] person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." D.E. 35 at 20; D.E. 47 at 14 (both quoting Ky. Rev. Stat. Ann. § 508.050(1)). As the Crime Commission's accompanying commentary states, "If a defendant has the requisite intent to cause apprehension of immediate injury and in fact causes that apprehension, the offense of menacing is committed." True "menacing" behavior "typically include[s] overt physical acts of aggression directed toward another person." *Martin v. Coyt*, No. 1:10-CV-176-TBR, 2012 WL 1574823, at *10 (W.D. Ky. May 3, 2012). But sometimes probable cause to arrest for menacing can be premised on "verbal threats alone." *Id*.

> Menacing involves "antagonistic behavior focused at another person," and some
> of the hallmarks include moving closer, using a raised voice or threatening tone,

16

and making physical contact or gestures.  Other factors include whether a potential aggressor is "armed, intoxicated, or indicating a desire to flee."  In one instance, there was probable cause for menacing when a defendant came close to officers, took an aggressive posture, and yelled, even though the defendant may have been raising his hands to comply with the officers' directive rather than to take a swing.

*McNally v. Tabor*, No. 6:18-CV-16-REW-HAI, 2019 WL 6044882, at \*9 (E.D. Ky. Nov. 15, 2019) (citations omitted).

The Court here notes a lack of clarity as to whether Kentucky courts recognize a civil action for menacing.  *See Boswell v. United States*, No. CV 7:23-66-KKC, 2024 WL 140431, at \*4 (E.D. Ky. Jan. 12, 2024) (finding no existing Kentucky tort of menacing).  However, Kentucky's negligence *per se* statute, Ky. Rev. Stat. Ann. § 446.070, may permit a person to recover damages caused by the violation of a criminal statute if the plaintiff was in the class of persons which that statute was intended to protect.  *See Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000).  Section 446.070 states, "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  This Court will proceed under the assumption Kentucky courts would recognize a civil action for menacing.

Here, Taylor again points to his factual allegation that "Pearce was verbally aggressive and threatening in his words and demeanor with the Plaintiff."  D.E. 47 at 14 (quoting D.E. 62 at 9 ¶ 44).  And Taylor again points out that he was thereafter assaulted and did suffer physical injury.  *Id*.  But, of course, this physical injury was inflicted by Patrick and Pauley, not by Pearce.  The problem here is Taylor provides no inkling of what Pearce specifically did and said.  There is no description of Pearce's posture, behavior, position in relation to Taylor, or tone of voice.  *See, e.g.*, *Martin*, 2012 WL 1574823, at \*10 (finding no menacing—intentional infliction of fear of injury—when the arrestee did not "run up to" the alleged victim, he "did not scream and yell his comment,"

17

and he did not touch the victim "or make a gesture toward him"); *Hadden v. Wathen*, No. 1:16-CV-140-GNS-HBB, 2018 WL 4222882, at *8 (W.D. Ky. Sept. 5, 2018) (finding an arrest for menacing may have been proper when the arrestee rose from a seated position and thrusted his hand into the officer's face). Lt. Pearce further argues that case law on menacing requires upsetting behavior beyond mere *verbal* aggression and threats, such as waving or pointing a gun. D.E. 35 at 20-21.

To allege that Lt. Pearce was "verbally aggressive and threatening" is too vague to factually support an inference that Pearce did something to intentionally place Taylor in reasonable apprehension of imminent physical injury. This is particularly true when the "aggressive and threatening" behavior is described exclusively as verbal. Such does not equate to menacing. If Pearce had made specific statements or gestures that would support a charge of menacing, they should have been included in the 2A Complaint.

## X. Civil Conspiracy

Count XVI alleges civil conspiracy on the part of Pearce, Patrick, and Pauley. D.E. 62 at 28-29. According to this Count,

> 220.    Under Kentucky law, for an actionable claim of civil conspiracy the following must be proven: (1) the presence of an unlawful/corrupt combination or agreement between the alleged conspirators; (2) to do some concerted action or unlawful act.
>
> 221.    Defendants Patrick, Pauley, and Pearce conspired to cover-up the assault of Plaintiff Taylor.
>
> 222.    Defendants Patrick, Pauley, and Pearce were aware of the assault of Plaintiff Taylor, and that there were laws and policies in place requiring that the assault be documented and reported.
>
> 223.    Defendants Patrick, Pauley, and Pearce violated federal law and policy by failing to document and report the assault of Plaintiff Taylor, this was a concerted action by the Defendants.

*Id*.  The 2A Complaint alleges that "Defendants Patrick, Pauley, Pearce and other BOP employees conspired to coverup the assault."  *Id*. at 13 ¶ 77.

In Kentucky, "there is no such thing as a civil action for conspiracy." *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002).  A so-called civil conspiracy claim is actually

> [an action] for damages caused by acts committed pursuant to a formed conspiracy. In the absence of such acts done by one or more of the conspirators and resulting in damage, no civil action lies against anyone since the gist of the civil action for conspiracy is the act or acts committed in pursuance of the conspiracy, not the actual conspiracy.

*Id*.  Kentucky courts define civil conspiracy as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means."  *Id*. (quoting *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (1936)).  "[T]here must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act."  *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008).  And, "before a conspiracy can be found, a 'necessary allegation is that the damage . . . resulted from some overt act done pursuant to or in furtherance of the conspiracy.'"  *James*, 95 S.W.3d at 897 (quoting *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (1945)).  Lt. Pearce's motion includes elements of civil conspiracy, but these are the elements under a *Bivens* or § 1983 action and are not applicable here.  D.E. 35 at 21.

Although the parties do not raise this issue, Count XVI is barred by the intra-corporate conspiracy doctrine.  Under this doctrine, a corporation and its employees count as a single entity. And since two or more actors are required to form a conspiracy, a corporation and/or its employees cannot form a conspiracy.  *Charleston Lab'ys, Inc. v. SIDIS Corp.*, No. 16-CV-195-DLB-JGW,

2017 WL 3725189, at *7 (E.D. Ky. Aug. 29, 2017) (citing *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. Of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991)).

> The intracorporate conspiracy doctrine holds that a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves.
>
> . . . .
>
> [The] doctrine is a logical extension of our rules that a corporation can only act through its agents, and that a conspiracy involves two or more persons[.]

*Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. Ct. App. 2016), *as modified* (Sept. 9, 2016) (citation and quotation marks omitted).

"This doctrine has been applied to bar civil rights claims alleging conspiracy between employees of the same governmental employer." *Boswell v. United States*, No. 7:23-CV-66-KKC, 2024 WL 140431, at *2 (E.D. Ky. Jan. 12, 2024). (citing *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)); *see also Thomas v. Walker*, No. 6:19-CV-226-REW, 2022 WL 989011, at *11 (E.D. Ky. Mar. 31, 2022) (finding the doctrine barred a civil conspiracy claim against Kentucky State Police troopers); *Virgil v. City of Newport*, 545 F. Supp. 3d 444, 489 (E.D. Ky. 2021) (city police officers), *aff'd sub nom. Colemon v. City of Cincinnati*, No. 21-5968, 2023 WL 5095804 (6th Cir. Aug. 9, 2023).

The only exception to this rule occurs when employees act outside the "course" or "scope" of their employment. *Marvaso v. Sanchez*, 971 F.3d 599, 607 (6th Cir. 2020); *Jackson v. City of Cleveland*, 925 F.3d 793, 819-20 (6th Cir. 2019); *Ohio ex rel. Moore v. Brahma Investment Group, Inc.*, 723 F. App'x 284, 289 (6th Cir. 2018); SCOPE OF EMPLOYMENT, Black's Law Dictionary (11th ed. 2019).

Does the "course" or "scope" of employment exception apply here? In describing the civil battery claim, the 2A Complaint alleges that "[a]t all relevant times, Defendants Patrick and Pauley

were acting within the scope of their employment for the BOP." D.E. 62 at 17 ¶ 113. The 2A Complaint makes no statement as to whether Pearce was also acting within the scope or course of his employment. However, all three defendants are named in this civil conspiracy count, Count XVI. If Patrick and Pauley were acting in the scope of their employment at "all relevant times," then when they conspired with Pearce to cover up the assault, this was also in the scope of their employment. Necessarily, then, Pearce, a fellow BOP employee, was also acting in the scope of his employment when he worked on the reports with Patrick and Pauley. Accordingly, under the 2A Complaint, Pearce was acting within the scope of his employment and the intra-corporate conspiracy doctrine bars the claim.

Further, this case resembles *Jackson*, where the plaintiffs alleged that police officers had fabricated evidence against them, and this was done in the scope of their employment. *Jackson*, 925 F.3d at 817-20. Additionally, *Boswell*, like this case, involved a claim that BOP employees conspired to cover up an assault. This Court found the intra-corporate conspiracy doctrine applied. *Boswell*, 2024 WL 140431, at *2. The same occurred in *Virgil*, a case about police officers fabricating evidence. *Virgil v. City of Newport*, 545 F. Supp. 3d 444, 489 (E.D. Ky. 2021), *aff'd sub nom. Colemon v. City of Cincinnati*, No. 21-5968, 2023 WL 5095804 (6th Cir. Aug. 9, 2023).

Given the holdings of these similar cases and the necessary inference in the 2A Complaint that Pearce was acting in the scope of his employment with two fellow BOP employees, the alleged civil conspiracy is barred by the intra-corporate conspiracy doctrine.

## XI. Conclusion

The undersigned hereby RECOMMENDS that Plaintiff Taylor's *Bivens* claim (Count IX) be dismissed. Because this case involves a federal inmate suing federal entities and employees over events taking place in a federal prison (and particularly because federal claims remain pending

against the codefendants), the undersigned further RECOMMENDS that the District Judge exercise supplemental jurisdiction and dismiss Counts XI (intentional infliction of emotional distress), XIV (terroristic threatening), XV (menacing), and XVI (civil conspiracy) for failure to state a claim and maintain supplemental jurisdiction over Counts XII (invasion of privacy) and XIII (civil harassment), at least while other federal claims remain pending in this case.

Any objection to this recommendation must be asserted in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under § 636(b)(1)(B). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 27th day of February, 2024.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge

22