UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

COREY TAYLOR,                         )
                                      )
        Plaintiff,                    )        Civil Action No. 7:22-CV-097-CHB
                                      )
v.                                    )
                                      )
UNITED STATES OF AMERICA, et al.,     )        **MEMORANDUM OPINION**
                                      )        **AND ORDER**
        Defendants.                   )
                                      )

**\*\*\* \*\*\* \*\*\* \*\*\***

This civil rights action is presently before the Court for consideration of several motions and a Recommended Disposition by United States Magistrate Judge Hanly A. Ingram. First, Defendant Kevin C. Pearce, Jr. has filed a Motion to Dismiss Plaintiff Corey Taylor's Amended Complaint. [R. 35]. Taylor filed a response, [R. 47], and Pearce filed a reply, [R. 50]. Taylor then filed a Second Amended Complaint, [R. 62], and Defendant Clinton Pauley filed a Motion to Dismiss Taylor's Second Amended Complaint. [R. 63]. Taylor responded, [R. 76], and Pauley replied, [R. 80]. Meanwhile, Magistrate Judge Ingram filed a Recommended Disposition in which he addressed the issues in Pearce's motion that were not resolved by Taylor's filing of his Second Amended Complaint. *See* [R. 68, pp. 2, 21–22]. Pearce has filed objections to the Recommended Disposition. [R. 70]. The United States has also filed a Motion to Dismiss, seeking dismissal of the Second Amended Complaint. [R. 69]. Taylor filed a response, [R. 76], and the United States replied, [R. 81]. These matters are therefore ripe for review. For the reasons set forth herein, the Court will adopt the Recommended Disposition in part, and will grant in part and deny in part the motions to dismiss.

- 1 -

I.      **Background**

The factual circumstances of this case are drawn from Taylor's Second Amended

Complaint. *See* [R. 62]. Taylor is an inmate committed to the custody and control of the federal

Bureau of Prisons ("BOP") by virtue of a judgment of conviction entered against him in the

United States District Court for the Southern District of Iowa. *Id.* ¶ 1. At the time of the events

giving rise to this litigation, Taylor was housed at the United States Penitentiary Big Sandy in

Inez, Kentucky. *Id.* ¶ 26.

The Second Amended Complaint states that Pearce, as a Lieutenant within the BOP, was

a superior officer to correctional officers and reported to the Captain. *See id.* ¶¶ 29–31. Pauley

held the title of Captain's Secretary and also reported to the Captain. *Id.* ¶¶ 32–33. Samuel

Patrick held the title of Case Management Coordinator and reported to the Associate Warden.

*See id.* ¶¶ 34–35. Although Pauley and Patrick held other titles, they could also work as

correctional officers and be assigned to inmate custody. *Id.* ¶ 36.

According to the Second Amended Complaint, at the time it was filed, the BOP was in a

"hiring frenzy" because many correctional officer jobs were vacant, leading to a practice known

as "augmentation," when individuals who are not correctional officers are used to guard inmates.

*Id.* ¶¶ 37–38. While Taylor has been housed at various BOP facilities, he has experienced

multiple occasions where BOP employees not typically assigned to inmate custody would work a

shift covering custody. *Id.* ¶ 39.

The Second Amended Complaint states that, on April 29, 2021, Taylor reported to the

Lieutenant's Office at USP Big Sandy. *Id.* ¶ 40. Upon arriving there, Taylor requested that he be

placed in protective custody, but Pearce, who was the on-duty lieutenant at that time, denied

Taylor's request. *Id.* ¶¶ 40–41. Pearce did not give a reason or explanation for denying Taylor's

request. *Id.* ¶ 42. During their interaction, Pearce was verbally aggressive and threatening in his words and demeanor with Taylor. *Id.* ¶ 44.

Patrick and Pauley were in the Lieutenant's Office with Pearce at that time, *id.* ¶ 43, and Patrick was also verbally aggressive and threatening in his words and demeanor with Taylor, *id.* ¶ 45. Before Taylor could leave the Lieutenant's Office, Patrick and Pauley, without any provocation, began viciously punching and assaulting a defenseless Taylor while Pearce looked on. *Id.* ¶ 46. At no time during the assault on Taylor did Pearce attempt to stop the assault. *Id.* ¶ 47. During the assault, the defendants used derogatory terms to refer to Taylor, including "bitch" and "race traitor." *Id.* ¶ 48.

As a result of the assault by Patrick and Pauley, Taylor suffered injuries to his body, face, and head, including a broken nose. *Id.* ¶ 49. After the assault, the Defendants did not voluntarily take Taylor to medical, despite the clear injuries he suffered in the assault. *Id.* ¶ 50. And despite witnessing the assault and seeing visible injuries, Pearce would later encourage BOP employees to draft reports stating that Taylor had left the Lieutenant's Office "without incident." *Id.* ¶ 51. Taylor alleges that security cameras are present throughout USP Big Sandy, but not within the Lieutenant's Office. *Id.* ¶ 52.

After the assault, Taylor was forcibly escorted to housing unit A1. *Id.* ¶ 53. Once there, he told the assigned correctional officer of the assault that had occurred in the Lieutenant's Office. *Id.* ¶ 54. Taylor recalls the assigned Unit Officer contacting the Case Manager for unit A1 to seek guidance on what to do, and the Unit Officer suggested contacting the Assistant

Warden.[1] *Id.* ¶¶ 55–56. However, the Case Manager advised that was not a good idea because "he was in on it." *Id.* ¶ 56. Eventually, the Case Manager and Unit Officer arranged for Taylor to receive medical treatment. *Id.* ¶ 57.

However, for reasons unknown, Taylor was informed by the Case Manager and Unit Officer that Pearce would escort him to the medical facility at USP Big Sandy. *Id.* ¶ 58. When Taylor protested, out of fear for his life, the Unit Manager agreed to also accompany Taylor to the medical unit. *Id.* Once Taylor arrived at the medical unit, Nurse Practitioner Eperson saw Taylor. *Id.* ¶ 59. It appears that the Unit Manager was not present for the exam; however, Pearce remained in the examination room during Eperson's examination of Taylor. *Id.* ¶ 60. Eperson made no attempt to ask Pearce to leave the examination room, and Pearce's presence prevented Taylor from fully disclosing the nature of the assault and instead forced him to only state that he "got beat up." *Id.* ¶¶ 61–62. When Eperson evaluated Taylor, he presented with cuts, laceration(s), and swelling to the face and head area, which Taylor alleges were all consistent with trauma. *Id.* ¶ 63. X-rays also confirmed that, as a result of the assault, Taylor's nose was broken. *Id.* ¶ 64. Following the assault, Taylor suffered from physical pain for an extended period of time, sensitivity to light and blurred vision, and from continual emotional and mental distress, fear, and anxiety. *Id.* ¶¶ 65–66.

After Eperson examined him, Taylor was placed in the Special Housing Unit ("SHU") at USP Big Sandy. *Id.* ¶ 67. While Taylor was in the SHU, correctional officers would routinely walk by to check on inmates, which allowed inmates to ask the correctional officers for various

---

[1] The Second Amended Complaint says "Assistant Warden," but the organizational chart filed with the Second Amended Complaint lists only "Associate Wardens." *See* [R. 62-1].

- 4 -

items through a hatch in the door. *Id.* ¶¶ 68–69. Taylor asked John Does 1–5 on various occasions for an administrative remedy form so he could complain about Patrick and Pauley's assault on him and Pearce's intimidation, but the John Does each refused to provide Taylor with an administrative remedy form when requested. *Id.* ¶¶ 70–71. This meant Taylor was not able to obtain the necessary administrative remedy forms until he was transferred from USP Big Sandy. *Id.* ¶¶ 72–74. He is now housed at Atwater USP in Atwater, California. *See Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 24, 2024); *see also* [R. 62, p. 3].

In May 2022, a grand jury in this District returned an indictment variously charging Patrick, Pauley, and Pearce with crimes relating to the assault on Taylor and another inmate and falsification of documents. *See* [R. 62, ¶ 65]; *see also Patrick*, No. 7:22-cr-00009 [R. 1 therein]. A Superseding Indictment was returned in October 2022. *See Patrick*, [R. 55 therein]. Ultimately, Patrick pled guilty to two counts of deprivation of rights under color of law (specifically, the right to be free from cruel and unusual punishment), one count of which related to Taylor, *see id.* [R. 99 therein]; Pauley pled guilty to three counts of deprivation of rights under color of law (specifically, the right to be free from cruel and unusual punishment), one count of which related to Taylor, *see id.* [R. 108 therein]; and Pearce was convicted by a jury of two counts of falsifying records, one count of which related to Taylor's assault, *see id.* [R. 55, R. 141 therein]. Pearce was found not guilty of deprivation of rights under color of law and obstruction of justice. *See id.* [R. 55, R. 141 therein].

Taylor represents that, prior to bringing this action, he exhausted his administrative remedies as it relates to the acts, actions, and/or omissions of the Defendants and that he administratively exhausted his Federal Tort Claims Act ("FTCA") claims against the United

States. *See* [R. 62, ¶¶ 83–84]. He also alleges that there have been numerous other unlawful assaults of federal inmates and instances of falsification of records by individuals at USP Big Sandy. *Id.* ¶¶ 85–87.

Taylor's original Complaint in this action was docketed on September 16, 2022. *See* [R. 1]. At that time, Taylor was unrepresented by counsel. *See id.* at 3. In his original Complaint, Taylor named the BOP, Pearce (in his official and individual capacities), Pauley (in his official and individual capacities), Patrick (in his official and individual capacities), John Does 1–5 (in their official and individual capacities), and Jane Doe 1 (in her official and individual capacities) as defendants. *See id.* at 1–2. At that time, he asserted various FTCA claims against the BOP, Patrick, Pauley, Pearce, and other individual defendants; a *Bivens*[2] claim against Patrick, Pauley, Pearce, Jane Doe, and John Does 1–5 for cruel and unusual punishment under the Eighth Amendment; and several state law claims against Patrick, Pauley, and Pearce. *See id.* at 13–30.

Upon review of Taylor's pro se complaint, the Court directed Taylor to file a written submission stating whether he would like the Court to request an attorney to represent him on a pro bono basis, consistent with 28 U.S.C. § 1915(e)(1).[3] *See* [R. 11, pp. 1–2]. Taylor responded in the affirmative and requested that the Court stay the proceedings until pro bono counsel was appointed. [R. 12, pp. 1–2]. The Court then entered an order that provided contact information for Noah R. Friend, an attorney who was willing to discuss representing Taylor. *See* [R. 13, p. 2]. The Court also observed that Taylor's civil case appeared to be related to a then-ongoing criminal matter in this District, *see id.* (citing *Patrick*, No. 7:22-cr-00009), and upon

---

[2] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] The Court also granted Taylor's request to proceed as a pauper. *See* [R. 10].

- 6 -

consideration of the record, granted Taylor's request for a stay, *see id.* at 3. On February 28,

2023, Mr. Friend entered his appearance on behalf of Taylor, [R. 14], and ultimately filed an

Amended Complaint (the "First Amended Complaint") on June 30, 2023. [R. 21].

     In his First Amended Complaint, Taylor again named the BOP (noting that the proper

party is the United States), Pearce, Pauley, Patrick, and John Does 1–5 as defendants, and he also

updated the name of Jane Doe to Heather Eperson. *Id.* at 1–2. The First Amended Complaint

again alleged several FTCA claims against the BOP, Patrick, Pauley, Pearce, and other

individual defendants; a *Bivens* claim against Patrick, Pauley, Pearce, Eperson, and John Does 1–

5 for cruel and unusual punishment and excessive force under the Eighth Amendment; and

several state law claim against Patrick, Pauley, and Pearce. *See id.* at 15–30.

     After being served, Pearce filed a Motion to Dismiss Taylor's Amended Complaint on

October 31, 2023. [R. 35]. Taylor filed a response to Pearce's motion, [R. 47], and Pearce filed a

reply, [R. 50]. Shortly after Pearce's reply was filed, Taylor filed a Motion for Leave to File

Second Amended Complaint ("Motion for Leave"). [R. 52]. The Motion for Leave represented

that the Second Amended Complaint would resolve several of the issues raised in Pearce's

motion to dismiss by dismissing Pearce from multiple claims under the FTCA and would drop

Eperson from the case as a named defendant. *See id.* at 1. The motion further submitted that,

based on these amendments, "the Motion to Dismiss should be considered fully briefed, and

remains fully applicable to the non-FTCA counts which have not been altered by the Second

Amended Complaint, as no factual changes have been made to the Second Amended Complaint

that would impact the resolution of the Motion to Dismiss." *Id.* at 2.

     The Court entered an order directing that any responses to the Motion for Leave address

whether the proposed Second Amended Complaint resolved any issues raised by Pearce's motion

to dismiss. [R. 53]. Pearce then filed a response in which he indicated that, if leave were granted, the Second Amended Complaint would render moot the issues raised in his motion to dismiss relating to Counts IV, V, VI, and VII (because Pearce would no longer be named in the FTCA claims), and that, if leave were granted, only a *Bivens* claim and separate Kentucky state law claims would remain against him, which had all been briefed in full. *See* [R. 54, pp. 1–2]. Pearce thus had no objection to Taylor's Motion for Leave. *See id.* at 2.

The Court granted Taylor's motion for leave, and the Second Amended Complaint became the operative pleading in this matter when it was filed on February 12, 2024. *See* [R. 61]; [R. 62]. The Second Amended Complaint did not change any of the factual allegations from those pled in the Amended Complaint, but it did remove Eperson as named defendant and changed all the FTCA claims to be only against the United States (styled as against the BOP). *See* [R. 62].

Accordingly, at this time, the following FTCA claims are presently asserted against the United States: [4] negligence (Count I); negligent hiring/retention/supervision (Count II); civil battery (Count III); invasion of privacy (Count IV); intentional infliction of emotional distress (Count V); civil conspiracy (Count VI); negligent infliction of emotional distress (Count VII); "Eighth Amendment – Failure to Protect" (Count VIII). *See* [R. 62, ¶¶ 88–159]. Taylor also asserts a *Bivens* claim for violations of the Eighth Amendment, against Patrick, Pauley, Pearce, and John Does 1–5 (Count IX), as well as the following state law claims: civil assault and battery

---

[4] Taylor's original Complaint, [R. 1] identified the BOP as the defendant.  *Id.* at 1.  However, his Second Amended Complaint, [R. 62], properly names the United States because "[a]n FTCA claim naming only an agency," such as the BOP, "fails to bestow jurisdiction."  *Helton v. Whitson*, No. 0:22-CV-112-CHB, 2023 WL 2229231, at *3 (E.D. Ky. Feb. 24, 2023) (quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir. 1998)) (cleaned up).  FTCA claims may proceed only against the United States.  28 U.S.C. § 2674.

against Patrick and Pauley (Count X); intentional infliction of emotional distress against Patrick, Pauley, and Pearce (Count XI); invasion of privacy against Pearce (Count XII); civil harassment against Pearce (Count XIII); terroristic threatening against Pearce (Count XIV); menacing against Patrick, Pauley, and Pearce (Count XV); and civil conspiracy against Patrick, Pauley, and Pearce (Count XVI). *Id.* ¶¶ 160–226.

After Taylor's Second Amended Complaint was filed of record, two of the remaining defendants—Pauley and the United States—each filed motions to dismiss.[5] *See* [R. 63]; [R. 69]. Both of those motions have been fully briefed. *See* [R. 76]; [R. 80]; [R. 81]. Magistrate Judge Ingram prepared a Recommended Disposition as to Defendant Pearce's Motion to Dismiss. [R. 68]. Pearce has filed objections. [R. 70]. All matters now stand submitted for review.

## II.     Legal Standard

### A.      Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).

---

[5] Patrick was served on November 8, 2023, [R. 42], but he has not filed any motions in this action or otherwise appeared in this case.

When ruling on a motion to dismiss under Rule 12(b)(6), the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam). In doing so, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### B.    28 U.S.C. § 636(b)(1)

Generally, this Court must make a *de novo* determination of only those portions of the Recommended Disposition to which objections are made. 28 U.S.C. § 636(b)(1). When no objections are made, this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a de novo or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 151 (1985). Parties who fail to object to a Magistrate Judge's recommended disposition are also barred from appealing a district court's order adopting that recommended disposition. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *United States v. Walters*, 638 F.2d 947, 949– 50 (6th Cir. 1981).

### III.    Federal Claims

#### A.    *Bivens* Claim (Count IX)

In his Second Amended Complaint, Taylor asserts a *Bivens* claim against Pauley, Pearce, Patrick, and John Does 1–5 in which he alleges violations of his Eighth Amendment rights. *See, e.g.*, [R. 62, ¶ 162 ("The Plaintiff has a Constitutionally protected right under the Eighth Amendment to the United States Constitution to be housed in a safe and secure environment

- 10 -

while in the custody of the BOP.")]; *see also id.* ¶ 166 ("The acts, actions, and/or omissions of

the Defendants constitute a violation of the Plaintiff's Constitutional right to be free from cruel

and unusual punishment, from the use of excessive force, and for the provision of adequate

medical care in private.").

Through their motions practice, Pearce and Pauley have filed Motions to Dismiss this

claim as against themselves. [R. 35]; [R. 63]. Pearce also briefly argues that it should be

dismissed "entirely" as to all defendants. [R. 35, p. 12]. Magistrate Judge Ingram filed a

Recommended Disposition as to Pearce's Motion to Dismiss, [R. 68], and addressed the *Bivens*

action. In his Recommended Disposition, Magistrate Judge Ingram agreed with Pearce that

Taylor's claims "are not properly brought under *Bivens*" because "[t]hey meaningfully differ

from previous *Bivens* cases." *Id.* at 5, 7. Ultimately, Magistrate Judge Ingram "recommend[ed]

dismissal of Count IX for failure to state a claim for which relief can be granted" as "Count IX's

alleged deprivations of rights are not the type that can be brought under the *Bivens* rubric." *Id.* at

7.

Taylor has not raised any objections to this recommendation, and the time to do so has

expired. Pearce's objections did not pertain to the *Bivens* action. [R. 70]. The Court, then, need

not review the Magistrate Judge's conclusions on the *Bivens* claim. *See Thomas*, 474 U.S. at 151.

Nevertheless, the Court has examined the record and agrees with the Magistrate Judge's

Recommended Disposition as to this claim. And because the Magistrate Judge's analysis applies

with equal force to all defendants named in the *Bivens* claim, the Court will explain its reasoning

and will ultimately dismiss the *Bivens* claim in full.

"A *Bivens* claim, named after a landmark 1971 Supreme Court decision that established

it, is a claim for money for injuries sustained as a result of a federal agent's violation of the

constitution while acting under his federal authority." *Dolan v. United States*, 514 F.3d 587, 594 n.2 (6th Cir. 2008) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397 (1971)). In other words, "[u]nder *Bivens,* a citizen may sue individual federal agents if he or she suffered a compensable injury to a constitutionally protected interest." *Browning v. Pennerton*, 633 F. Supp. 2d 415, 430 n.11 (E.D. Ky. 2009) (cleaned up).

"To establish a claim under *Bivens*, a plaintiff must show [1] that he was deprived of rights secured by the Constitution or laws of the United States and [2] that the defendants who allegedly deprived him of those rights acted under color of federal law." *Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766, at *2 (6th Cir. Feb. 1, 2024)[6] (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014)) (cleaned up). However, the contexts in which *Bivens* has been found to apply are limited, and:

> [t]he Supreme Court has explicitly recognized only three contexts in which a private right of action for damages may be properly brought against federal officials for constitutional violations: (1) under the Fourth Amendment for violations of the prohibition against unreasonable searches and seizures, *Bivens*, 403 U.S. at 397; (2) under the Fifth Amendment Due Process Clause for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and (3) under the Eighth Amendment for failing to provide adequate medical treatment to a prisoner, *Carlson v. Green*, 446 U.S. 14, 14–15 (1980).

*Anderson*, 2024 WL 1697766, at *2.

Under this precedent, the Sixth Circuit has stressed that "[e]xpanding the reach of *Bivens* is now a disfavored judicial activity." *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)) (cleaned up). "Thus, in determining whether *Bivens* can afford relief in a particular case,

---

[6] A petition for certiorari was docketed on August 28, 2024.

a court must first ask whether the case presents a new *Bivens* context," meaning the "case is meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* (quoting *Egbert v. Boule*, 596 U.S. 482, 492 (2022)) (internal quotation marks omitted). "If a case presents a new *Bivens* context, then a court must determine if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (cleaned up). "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* (cleaned up).

In his *Bivens* claim, Taylor alleges that he "has a Constitutionally protected right under the Eighth Amendment to the United States Constitution to be housed in a safe and secure environment while in the custody of the BOP" and that "[t]he acts, actions, and/or omissions of the Defendants constitute a violation of the Plaintiff's Constitutional right to be free from cruel and unusual punishment, from the use of excessive force, and for the provision of adequate medical care in private." [R. 62, ¶¶ 162, 166]. The Court understands Taylor alleges the defendants' actions violated the Eighth Amendment, meaning that they constituted cruel and unusual punishment, in three ways: their actions constituted a violation of his rights (1) "to be housed in a safe and secure environment," (2) to be free from excessive force, and (3) "for the provision of adequate medical care in private." *See id.*

Recently, the Sixth Circuit found a federal inmate's excessive force claim to be a new *Bivens* context. *See Anderson*, 2024 WL 1697766, at *3. The court explained:

> [Plaintiff's] Eighth Amendment excessive-force claims arise in a new context. Despite recognizing a deliberate-indifference claim under the Eighth Amendment, the Supreme Court has never recognized an excessive-force claim. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."

- 13 -

*Id.* (quoting *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020) (internal citations omitted); *see also Boswell v. United States*, 2024 WL 140431, *3 (E.D. Ky. Jan. 12, 2024) ("[T]his Court and many others have concluded that *Bivens* does not supply an implied damages remedy against federal officers for an asserted violation of the Eighth Amendment for the excessive use of force.").

The Court thus finds that Taylor's excessive force claim arises in a new context. It must therefore ask whether there are "special factors" counseling against recognizing a *Bivens* claim in this context. *See Anderson*, 2024 WL 1697766, at *3. Again, *Anderson* is instructive, as it found special factors *did* advise against recognizing a *Bivens* claim for a federal inmate's excessive-force claims against officers at a United States penitentiary. *See id.* The court in *Anderson* noted three specific factors, including (1) the alternative processes that exist for protecting an inmate's Eighth Amendment rights, (2) the policy underlying the Prison Litigation Reform Act (which, by not providing a standalone damages remedy against federal jailers, demonstrates Congress's decision not to extend the damages remedy in *Carlson v. Green*, 446 U.S. 14 (1980), to cases involving other types of prisoner mistreatment), and (3) the separation of powers concerns presented by an excessive force claim against a federal prison employee, including the risk of interference with prison administration, which is a task given to the legislative and executive branches. *See id.* These three concerns apply with equal force to Taylor's excessive force claim and thus advise against recognition of a *Bivens* claim in this action based on an excessive force theory.

Moreover, the reasoning of *Anderson* reveals that Taylor's *Bivens* claims based on theories of being housed in an unsafe and unsecure environment and for failing to provide "adequate medical care in private" are "meaningfully different" from *Carlson*, such that a new

- 14 -

*Bivens* cause of action would have to be inferred for these theories as well. *See id.* As the court in *Anderson* explained, *Carlson* dealt with a federal prisoner who died from an asthma attack after prison officials were "deliberately indifferent to his serious medical needs." *See id.* And in comparing the facts of *Carlson* to the facts in *Anderson*, the Sixth Circuit found Anderson's allegations "that officers failed to conduct a medical examination when his restraints were removed and that he suffered significant injuries to his waist area and lasting anxiety" "differ[ed] markedly" from the scenario of *Carlson*, meaning that Anderson's deliberate indifference claim presented a new *Bivens* context. *See id.* (internal quotation marks omitted). The Sixth Circuit then explained that the special factors that counseled against recognizing an excessive-force claim under *Bivens* also advised against recognizing a *Bivens* action based on a deliberate-indifference theory for Anderson. *See id.* at *4. The same is true here.

Moreover, to the extent Taylor is attempting to argue there is a constitutional right to privacy in his medical information, courts have held that "prisoners have no constitutional right to nondisclosure of private information." *See, e.g.*, *Ward v. Samuel*, 2013 WL 249683, *3 (E.D. Mich. Jan. 23, 2013) (citing *Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994)) (holding the disclosure of medical information to other inmates and staff was not a constitutional violation); *Shepherd v. Sheldon*, 2011 WL 2971965 (N.D. Ohio July 21, 2011) (collecting cases ("In the Sixth Circuit the release of medical records does not implicate a fundamental right."); *but see Moore v. Prevo*, 379 F. App'x 425 (6th Cir. 2010) (finding a right to privacy in medical information as it relates to the disclosure to other inmates). More specifically, when an inmate alleged a doctor "disclosed medical information about [p]laintiff to inmates and staff in violation of his Eighth and Fourteenth Amendment rights," a court found "[d]isclosure of an inmate's confidential medical records does not rise to the level of an Eighth Amendment violation."

- 15 -

*Weatherspoon v. Toner*, 2014 WL 4385432, *6 (W.D. Mich. Sept. 3, 2014) (discussing a state prisoner). The Supreme Court has never acknowledged a *Bivens* action for interference with medical privacy.

Moreover, under existing precedent, it is clear that Taylor's allegations that Pearce stayed in the exam room while he received medical treatment (allegedly ignoring Taylor's right to medical privacy) differ markedly from situations where the Supreme Court found a *Bivens* action to lie. Taylor had no constitutional right to be examined in private, let alone one similar to a recognized-*Bivens* context. *See Weatherspoon*, 2014 WL 4385432, at *6. Further, the same special factors discussed above are also present for Taylor's other theories. *See id.* ("And for the same reasons stated above, special factors advise against recognizing a *Bivens* claim in this context."). Even in a case finding inmates had a right to medical privacy to the extent their information could not be shared with other inmates, the court held the right "is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Moore*, 379 Fed. App'x at 428 (citations omitted). The Court will not create a new *Bivens* action in this case.

Thus, the Court holds that none of Taylor's theories can support a *Bivens* claim on this record against any defendant. As to this claim, then, the Court will adopt the Recommended Disposition's reasoning and will grant Pearce's and Pauley's motions to dismiss as to Taylor's *Bivens* claim. Further, the claim will be dismissed as against Patrick and the John Doe Defendants.

### B.    FTCA Claims and Corresponding State Law Claims

Taylor also asserts eight FTCA claims against the United States: negligence (Count I); negligent hiring/retention/supervision (Count II); civil battery (Count III); invasion of privacy

(Count IV); intentional infliction of emotional distress (Count V); civil conspiracy (Count VI); negligent infliction of emotional distress (Count VII); and "Eighth Amendment – Failure to Protect" (Count VIII). *See* [R. 62, ¶¶ 88–159]. Taylor then asserts several corresponding state law claims: civil assault and battery against Patrick and Pauley (Count X); intentional infliction of emotional distress against Patrick, Pauley, and Pearce (Count XI); invasion of privacy against Pearce (Count XII); civil harassment against Pearce (Count XIII); terroristic threatening against Pearce (Count XIV); menacing against Patrick, Pauley, and Pearce (Count XV); and civil conspiracy against Patrick, Pauley, and Pearce (Count XVI). *Id.* ¶¶ 160–226.

As best as the Court can tell, Taylor's FTCA and state law tort claims are overlapping in the sense that they seek to hold the United States and the individually named defendants liable for the same conduct. This presents a procedural problem for Taylor's case. This is because Taylor appears to be asserting, or attempt to assert, various FTCA claims against the United States based on alleged conduct—i.e., certain torts—committed by BOP employees acting within the scope of their employment. If Taylor is able to prove up these claims, then he can likely proceed against the United States. But, notably, as explained below, the FTCA only authorizes tort lawsuits against the United States itself; indeed, the FTCA expressly shields individual federal employees from personal liability for torts that they commit within the scope of their employment. *See Levin v. United States*, 568 U.S. 503, 509 (2013); 28 U.S.C. § 2679(b)(1). So, if Taylor is ultimately able to proceed with his FTCA claims against the United States, then that would likely undermine several (if not all) of his state law tort claims against the individually named defendants. On the other hand, if Taylor is unable to demonstrated that the alleged conduct occurred within the scope of the BOP employees' employment, then his FTCA claims may be unavailing. In that case, however, Taylor could presumably proceed with his state law

tort claims against the individually named defendants.  But since those state law claims would be the only remaining claims in this case, the Court would likely refuse to exercise supplemental jurisdiction. At this time, with an undeveloped record before it, the Court cannot resolve this procedural issue. The Court will provide a brief overview of the relevant law to explain its concerns.

While the United States "cannot be sued unless it has waived sovereign immunity, *id.* at *2 (citation omitted), the FTCA constitutes a limited waiver of the United States' sovereign immunity "and allows tort claims 'in the same manner and to the same extent as a private individual under like circumstances.'" *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (quoting 28 U.S.C. § 2674). Specifically, § 1346(b)(1) provides that

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Section 2679(b)(1) then goes on to explain that the remedy provided by § 1346(b) "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1). Thus, for torts committed by federal employes acting within the scope of their employment, the FTCA provides the exclusive remedy. *See* 28 U.S.C. § 2679(b)(1); *Levin*, 568 U.S. at 509 (discussing § 2679(b)(1), often referred to as the Westfall Act, and explaining that it "makes the remedy against the United States under the FTCA exclusive for torts committed by federal employees acting within the scope of their employment"); *Does 1–10 v. Haaland*, 973 F.3d 591, 597 (6th Cir. 2020) (discussing the Westfall Act).

In its motion seeking dismissal of Taylor's FTCA claims, the United States argues that most of the claims fail because the FTCA does not waive sovereign immunity for acts falling within its discretionary function exception or acts occurring outside the scope of the actor's employment. *See* [R. 69, pp. 8–11]. Stated another way, the crux of the United States argument is that Taylor's FTCA claims are barred by sovereign immunity. Importantly, "'[a] motion to dismiss on the basis that [a] plaintiff's claim is barred by sovereign immunity is a motion to dismiss for lack of subject matter jurisdiction.'" *B.A. v. United States*, No. 5:21-cv-106-DCR, 2021 WL 4768248, at *1 (E.D. Ky. Oct. 12, 2021) (quoting *Sawyers v. United States*, No. 3:15-cv-873-GNS-DW, 2016 WL 7223430, at *1 (W.D. Ky. Dec. 12, 2016)). And that attack on subject matter jurisdiction is considered a factual, rather than facial, attack. *Id.* at *1 ("An assertion of sovereign immunity constitutes a factual attack on the Court's subject matter jurisdiction."); *see also Rudd v. United States*, No. 5:22-cv-201-GFVT, 2023 WL 4936671, at *3 (E.D. Aug. 2, 2023) (explaining that, to determine whether subject matter jurisdiction was properly invoked, the court was required to make a factual finding regarding the federal employee's intent, to determine if he acted within the scope of employment, and it therefore construed the United States's arguments as being a factual, not facial, attack). As a result, this Court "can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction," and "[t]he burden is on the plaintiff to prove that jurisdiction exists." *B.A.*, 2021 WL 4768248, at *2 (citations and quotation marks omitted).

When determining whether an employee acted within the scope of his employment, the Court applies the law of the state where the action occurred. *See* 28 U.S.C. § 1346(b)(1). As this Court has explained:

- 19 -

> Under Kentucky law, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Papa John's Int'l v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)). An intentional tort committed by the employee may be within the scope of his or her employment if "its purpose, however misguided, is wholly or in part to further the master's business." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). "[T]o be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000).

*B.A.*, 2021 WL 4768248, at *2.

In the present case, Taylor brings multiple FTCA claims against the United States. As already explained, he may only bring such claims if the federal employee's tortious acts or omissions were committed within the scope of employment. *See, e.g.*, 28 U.S.C. § 1346(b)(1). In other cases, the Court has recognized that not every use of force by a correctional officer falls outside the scope of his or her employment. *See Robinson v. United States*, No. 6:21-cv-204-REW, 2024 WL 1219716, *10 (E.D. Ky. Mar. 21, 2024) (recognizing that "when a correctional officer attempts to control a non-compliant inmate," the force used "is more likely to be 'of the same general nature as [the conduct] authorized or incidental to the conduct authorized.' Thus, not every use of excessive force by an officer, even when characterized as an assault, will necessarily fall outside the scope of the officer's employment." (quoting *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000))). And Taylor insists that the alleged torts in this case *were* committed in the scope of the defendants' employment with the BOP. [R. 76, p. 11 ("The Second Amended Complaint provides more than enough grounds to reflect that the actions of the correctional officers occurred within the scope of their employment.")]. But assuming this is accurate, it appears that his FTCA claims against the United States provide his exclusive remedy,

- 20 -

and he may not pursue the corresponding state law claims against those individual defendants.[7]
*See* 28 U.S.C. § 2679(b)(1); *Levin*, 568 U.S. at 509; *Does 1–10*, 973 F.3d at 597.

On the other hand, the United States argues that the alleged torts were committed outside the scope of the individual defendants' employment. [R. 69, pp. 6–11]. The allegations in Taylor's Second Amended Complaint also suggest that the actions of these individual defendants may have occurred outside the scope of their employment. *See, e.g.*, [R. 62, ¶ 46 (alleging that Patrick and Pauley assaulted Taylor "without any provocation whatsoever")]. Further, Patrick and Pauley plead guilty in the criminal proceeding to depriving Taylor of his constitutional right to be free from cruel and unusual punishment, and in doing so, they agreed that they assaulted Taylor "out of anger and not due to any legitimate correctional purpose." *See United States v. Patrick, et al.*, No. 7:22-cr-00009 [R. 99, p. 2; R. 108, p. 2 therein]. These facts suggest that the defendants' actions were outside the scope of their employment. *See Robinson*, 2024 WL 1219716, at *10 (explaining that, on the facts of that case, certain retaliatory conduct, "if true, in no way furthers the BOP's missions or functions"). If the underlying torts were committed outside the scope of the individual defendants' employment with the BOP, then it appears to the Court that those torts cannot serve as the basis for his FTCA claims.

In other words, if the underlying torts were committed within the scope of the individual defendants' employment, it appears that the FTCA is the exclusive remedy, in which case the Court must dismiss the corresponding state law claims. On the other hand, if the underlying torts were committed *outside* the scope of the individual defendants' employment, Taylor can pursue

---

[7] This does not mean that Taylor is precluded from pleading in the alternative; however, it is not clear from his pleadings or his briefing in this matter that that was his intent.

his state law tort claims against those defendants, but he cannot pursue any FTCA claims based on those underlying torts. Under those circumstances, the Court would dismiss the FTCA claims and, with the *Bivens* claims already disposed of, no further federal claims would remain before the Court. At that point, it is unlikely that the Court would accept supplemental jurisdiction over the state law claims. *See Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (explaining that, "[g]enerally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well" (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966))).

Clearly, then, the question of whether these BOP employees were acting within the scope of their employment is central to this case and to the Court's ultimate determination of which claims may proceed. And the prison employees' "purpose or motive in engaging in the conduct is critical" in deciding whether those employees were acting within the scope of their employment. *Robinson*, 2024 WL 1219716, at *10. The resolution of this question necessarily involves "weigh[ing] evidence," *B.A.*, 2021 WL 4768248, at *2, and making a "factual finding" regarding the employees' intent, *Rudd*, 2023 WL 4936671, at *3. At this time, the record is undeveloped, and the parties have not squarely addressed whether the FTCA provides the sole remedy for torts committed within the scope of the federal employees' employment, and if so, how that affects Taylor's claims in this case. The Court finds that it cannot adequately address the questions presently before it without a more developed record.

In sum, given the conflicting arguments by Taylor, the United States, and Pauley, and the limited record before the Court, the Court finds that it would be premature to grant the United States' and Pauley's motions to dismiss at this time. Instead, the Court will deny the United States' and Pauley's motions without prejudice to their right to reassert these arguments at the

appropriate time. In the meantime, the Court will allow Taylor to file a status report clarifying the nature of his claims.

### IV.    CONCLUSION

For the foregoing reasons, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Recommended Disposition [**R. 68**] is **ADOPTED IN PART** as the order of this Court, to the extent that it recommends dismissal of the *Bivens* claim. The Court will therefore **DISMISS** Count IX, the *Bivens* action, in its entirety.

2. Pearce's Motion to Dismiss [**R. 35**] is **GRANTED IN PART** and **DENIED IN PART**.

   a. The motion is **GRANTED** to the extent Pearce seeks dismissal of the *Bivens* claim against him.

   b. The motion is **DENIED without prejudice** in all other respects.

3. Pauley's Motion to Dismiss [**R. 63**] is **GRANTED IN PART** and **DENIED IN PART**.

   a. The motion is **GRANTED** to the extent Pauley seeks dismissal of the *Bivens* claim against him.

   b. The motion is **DENIED without prejudice** in all other respects.

4. The United States' Motion to Dismiss [**R. 69**] is **DENIED without prejudice**.

5. On or before **October 21, 2024**, Taylor **SHALL** file a status report clarifying the nature of his claims.

This the 30th day of September, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY